Filed 3/23/26  P. v. Simpson CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Shasta)

----

| | |
|---|---|
| THE PEOPLE, | C102041 |
| Plaintiff and Respondent, | (Super. Ct. Nos. 23F5537, 24F1817) |
| v. | |
| MATTHEW RAY SIMPSON, | |
| Defendant and Appellant. | |

After the trial court denied his petition for mental health diversion under Penal Code section 1001.36 (statutory section references that follow are to the Penal Code unless otherwise stated), defendant Matthew Ray Simpson pleaded guilty to numerous narcotics and firearm offenses in two criminal matters, and the court sentenced him to an aggregate term of 21 years in prison.

On appeal, defendant contends:  (1) the trial court erred in finding him ineligible for mental health diversion; (2) his trial counsel rendered ineffective assistance of counsel by failing to object when, after he waived a preliminary hearing, the prosecution added a

1

firearm enhancement that was not originally alleged in the complaint; (3) the court erred by accepting his guilty plea to a violation of Health and Safety Code section 11357, subdivision (b) based on conduct that is not criminal under the statute; and (4) the court should have stayed punishment on several counts and enhancements under section 654.

We agree the trial court applied an incorrect legal standard in ruling on his petition, and substantial evidence does not support its ineligibility finding. We also agree the court erred by accepting a guilty to plea to conduct that is not criminal. We reverse defendant's possession of marijuana conviction, conditionally vacate the remainder of defendant's guilty pleas, conditionally reverse the judgment, and remand the matter for further proceedings consistent with section 1001.36 and this opinion. We do not reach defendant's remaining appellate claims.

### FACTS AND HISTORY OF THE PROCEEDINGS

<u>Case</u> <u>No.</u> <u>23F5537</u>

According to the police report to which defendant stipulated as the factual basis for his plea, in July 2023 Anderson police officers served a search warrant at a parcel of land with multiple residences. Officers detained several individuals found in the various residences, including defendant. In a bedroom that contained defendant's belongings, officers located approximately 216 grams of methamphetamine, an operable digital scale, Ziploc style plastic baggies, and methamphetamine water bongs. A safe in the bedroom contained 43.9 grams of fentanyl, $2,000 in currency, and two handguns—a non-serialized Glock style "P80" handgun with an empty magazine and a threaded barrel, and a Glock 9-millimeter 43X that was reported stolen from Oregon. Officers arrested defendant.

During their investigation, officers interviewed a woman who owned and lived in the residence where defendant was found; she told police she did not want defendant living there anymore due to frequent foot traffic around her property. A neighbor said she

2

saw at least five or six people a day, who appeared to be under the influence, visiting defendant's residence.

Following his arrest, defendant and a codefendant were jointly charged in a complaint in Shasta County case No. 23F5537 with various drug and firearm offenses. After defendant waived a preliminary hearing, the prosecution filed an information against defendant alone (with renumbered counts) charging him with possession of fentanyl for sale (Health & Saf. Code, § 11351, count 1); maintaining a place for selling or using a controlled substance (*id.*, § 11366, count 2); possession of methamphetamine for sale (*id.*, § 11378, count 3 [formerly count 4 in the complaint]); possession of an assault weapon (§ 30605, subd. (a), count 4 [semi-automatic pistol with a threaded barrel]); unlawful possession of ammunition by a felon (§ 30305, subd. (a), count 5); felon in possession of a firearm (§ 29800, subd. (a), count 6 [Glock .9 millimeter 43X]); possession of a controlled substance while armed with a firearm (a Glock .9 millimeter 43X) (Health & Saf. Code, § 11370.1, subd. (a), count 7); and misdemeanor possession of an injection/ingestion device (*id.*, § 11364, subd. (a), count 8).

The information alleged a principal was armed with a firearm (a semi-automatic pistol with a threaded barrel) (§ 12022, subd. (a)(2)) as to count 1 (possession of fentanyl for sale) and count 2 (maintaining a place for selling or using a controlled substance), which had previously been alleged in the complaint. The information also added the same arming enhancement to count 3 (possession of methamphetamine for sale), which had not been alleged in the complaint. One factor in aggravation was alleged. (Cal. Rules of Court, rule 4.421(b)(2) [prior convictions increasing in seriousness].)

Defendant was released on bond. He later filed a petition for mental health diversion under section 1001.36, which the People opposed because he provided no evidence that he had been diagnosed with a qualifying mental disorder. Defendant subsequently withdrew the petition.

<u>Case No. 24F1817</u>

On March 13, 2024, Anderson police officers stopped a car defendant was driving after he drove through a crosswalk as a pedestrian crossed. A subsequent vehicle search revealed about one ounce of methamphetamine in the center console, which defendant admitted he possessed for sale. Officers later searched two storage units linked to defendant and recovered additional methamphetamine in various quantities (totaling 4.61 ounces plus an additional 1.9 grams). They also located 7.6 grams of psilocybin mushrooms, 11 pounds of marijuana, 20-30 items of drug paraphernalia, a pay/owe notebook with records, and 12 firearms, including two shotguns and one short-barreled shotgun, three rifles, an assault rifle, two revolvers, and three handguns. Thousands of rounds of ammunition were recovered, and officers also seized stolen property, license plates, and nearly $2,800 in cash.

Defendant was charged in Shasta County case No. 24F1817 with possession of methamphetamine for sale (Health & Saf. Code, § 11378, count 1); sale/offer to sell/transportation of methamphetamine (*id.*, § 11379, subd. (a), count 2); three counts of being a felon in possession of a firearm (§ 29800, subd. (a), count 3 [three shot guns], count 7 [five handguns], count 8 [four rifles]); unlawful possession of ammunition by a felon (§ 30305, subd. (a)(1), count 4); possession of an assault weapon (§ 30605, subd. (a), count 5); possession of a short-barreled rifle or shotgun (§ 33215, count 6); misdemeanor possession of an injection/ingestion device (Health & Saf. Code, § 11364, subd. (a), count 9); misdemeanor possession of methamphetamine (*id.*, § 11377, subd. (a), count 10); misdemeanor "possession of marijuana 28.5 grams or less" (*id.*, § 11357, subd. (b), count 11); misdemeanor sale/offer to sell/transportation of cannabis (*id.*, § 11360, subd. (a)(2), count 12); and misdemeanor receiving stolen property not exceeding $950 in value (§ 496, subd. (a), count 13).

The complaint alleged two aggravating factors for counts 1 through 4 and counts 6 through 9. (Cal. Rules of Court, rule 4.421(b)(1) [violent conduct indicating a serious danger to society], (b)(2) [prior convictions numerous or of increasing seriousness].) An on-bail enhancement (§ 12022.1, subd. (b)) was also added to the complaint before defendant pleaded not guilty and denied the charges.

In April 2024, defendant filed an amended petition for mental health diversion in case No. 24F1817, which the trial court denied at a hearing four days later. The amended diversion petition and the ruling denying it are discussed more fully below.

Defendant's Plea and Sentence

After the trial court denied his amended diversion petition, defendant agreed to an open plea in both cases.[1] In case No. 23F5537, defendant pleaded guilty to all eight counts, admitted the section 12022, subdivision (a)(2) firearm enhancements attached to counts 1, 2, and 3, and admitted the alleged aggravating factor (Cal. Rules of Court, rule 4.421(b)(2)) in exchange for a potential maximum term of 13 years 10 months in prison. In case No. 24F1817, defendant pleaded guilty to all 13 counts, admitted the on-bail enhancement (§ 12022.1, subd. (b)), and admitted the two factors in aggravation in exchange for a potential maximum term of 11 years, two months in prison.

Defendant filed a sentencing memorandum asking the trial court to grant him probation to attend a residential treatment program that had accepted him for treatment. According to defendant, his heavy drug addiction over the years caused his life to spiral, making him unemployable and leading him to sell drugs to earn income to finance his drug habits. He traded or sold methamphetamine in exchange for weapons from fellow

---

[1] Defendant also pleaded guilty to various charges in two misdemeanor cases (case Nos. 24M98 and 24M1821). The court later sentenced defendant to credit for time served in both matters, which are not at issue on appeal.

addicts, which he then traded for more methamphetamine. The People asked the court to deny probation and impose a 21-year prison sentence.

At the sentencing hearing in August 2024, the trial court found defendant was not eligible for probation absent unusual circumstances, and there were no unusual circumstances. The court sentenced defendant to an aggregate determinate term of 21 years in prison.

In case No. 23F5537, the court selected count 1 (Health & Saf. Code, § 11351) as the principal term and imposed the four-year "aggravated term," plus an additional three years for the associated arming enhancement (§ 12022, subd. (a)(2)). For counts 2 through 7, as well as the arming enhancements attached to counts 2 and 3, the court imposed consecutive one-third the midterm sentences; the court awarded credit for time served for count 8 (a misdemeanor).

In case No. 24F1817, the court imposed consecutive sentences of one-third the midterm each on counts 1 through 8, two years for the on-bail enhancement (§ 12022.1, subd. (b)), and credit for time served for each of the remaining misdemeanors (counts 9 through 13).

Defendant filed a timely notice of appeal and obtained a certificate of probable cause.

DISCUSSION

I

*Defendant's Amended Petition for Mental Health Diversion*

Defendant contends the trial court abused its discretion in denying his amended petition for mental health diversion because it misapplied the law, and substantial evidence does not support its ruling. We agree.

Defendant filed an amended diversion petition in April 2024. The petition alleged defendant was not charged with any disqualifying offenses and asserted he was prima

6

facie eligible for relief under section 1001.36. "[B]ased on the presumption imposed by Penal Code § 1001.36(b)(2)" and an attached "psychological evaluation," defendant argued there was evidence that his mental disorders were a significant factor in committing the alleged offenses.

Defendant submitted documentation from Laura McArdle, a substance use disorder registered counselor with Empire Recovery Center, stating he had been assessed by the agency on February 29, 2024, and had been diagnosed with severe amphetamine use and cannabis use disorders. According to McArdle, defendant attended three recovery groups at Empire Outpatient and two community recovery groups per week; he had been "steady and dedicated to his recovery" during that time. While receiving treatment, defendant indicated he needed a higher level of care and asked to be referred to the agency's residential program. McArdle recommended that defendant "receive 90 days of residential treatment due to his diagnoses of severe methamphetamine and cannabis use disorder." Defendant also submitted a proposed treatment plan from Empire Recovery that included the recommended 90 days of residential treatment, plus medical evaluations, doctor's appointments, and participation in various educational groups.

Defendant waived his speedy trial rights, consented to treatment, and stated he was willing to comply with the treatment program, including any substance abuse or other psychological or psychiatric treatment the court might order. He further asserted he did not pose an unreasonable risk of danger to the public of committing a super strike.

The trial court considered the amended petition at a hearing four days later. Although the court offered to continue the hearing to allow the People to oppose the petition in writing, the People declined and instead elected to proceed with argument.

Defense counsel asserted defendant was eligible and suitable for diversion, and did not pose an unreasonable risk of danger if treated in the community. In counsel's view, a substance use disorder registered counselor (like McArdle) had sufficient expertise and abilities regarding substance abuse to make a diagnosis under section 1001.36.

7

Regarding whether there was a sufficient nexus to show the diagnosed mental health disorders were a significant factor in committing the offenses, counsel argued, "there is a clear connection between his use disorder and him using and possessing controlled substances" and that "it is generally very common that people who possess controlled substances have in their possession a firearm" because a drug dealer could not necessarily call police if someone stole his or her drug stash.

The People argued the petition was "facially deficient" because a substance abuse counselor was not qualified to render a diagnosis under section 1001.36. Rather, the statute required a diagnosis from "a medical provider with the legal qualifications to provide a diagnosis [under the DSM-V] such as a psychologist or psychiatrist or medical doctor." The People also disagreed that possession of a firearm was necessarily an "element of a substance abuse disorder" but conceded such was an "evidentiary issue and that can be raised by the People, for example, by calling their expert who provides an appropriate diagnosis to the stand."

Following argument, the trial court made several observations before denying the petition. The trial court initially commented that whether a substance abuse counselor was qualified to give a diagnosis under the diversion statute was "a little bit of a question," although it acknowledged that section 1001.36 "pretty broad[ly]" defined a qualified "mental health professional." It then stated it was somewhat unclear if, and when, the substance abuse counselor had diagnosed defendant with the substance use disorders, if defendant had self-reported the diagnoses, or if someone else diagnosed defendant with the disorders. Without resolving these questions, however, the court turned to its main concern—a perceived lack of connection or nexus between the charged offenses and defendant's substance use orders.

After noting it was "a little surprised" that the People did not focus on nexus, the court stated it did not understand how there is a "clear connection as the defense has indicated to the use and possession and particularly possession for sale of controlled

8

substances to addiction."  In the court's view, "[t]he level of sophistication that would be required to determine how and where to acquire a controlled substance, to process it for the purpose of sale, to distribute it in a manner that would be sellable, to track that sale and to do all of that within a profitable and effective way and avoid detention from law enforcement is something that is not an unconscious act as a result of being addicted to a controlled substance.  That is something that takes planning and sophistication and premeditation, something that is not just an involuntary act," especially considering defendant possessed more than one controlled substance and acquired and maintained numerous different assault weapons or firearms.

The court continued:  "this isn't just an addict that possesses for his own purposes and own use one controlled substance, that is different, that is [section] 1000 diversion.  This is mental health diversion.  And, I don't think in any way shape or form this is what the [L]egislature intended mental health diversion to be."  According to the court, if it were "to stretch this into a mental health diversion, then . . . 80 to 90 percent of the cases that run through each of the two felony home courts in this county every person would qualify for mental health diversion because . . . controlled substances in some way enter into or relate to a lot of felony cases."

The court recognized that section 1001.36 required it "to at least presume or find that there is some sort of nexus here" unless clear and convincing evidence showed otherwise, but found, "for common sense reasons," that the presumption was rebutted.  The court reasoned that "methamphetamine addiction use is [not] a common sense causal factor to all of these things where we talk about possession for sale."  The court thus denied the petition.

Mental Health Diversion under Section 1001.36

Section 1001.36 authorizes pretrial diversion for criminal defendants suffering from certain recognized mental disorders.  (*People v. Whitmill* (2022) 86 Cal.App.5th

9

1138, 1147.) To qualify, criminal defendants must show they are both "eligible" and "suitable" for the program. (§ 1001.36, subds. (a), (b).)

A defendant accused of a qualifying offense is eligible for mental health diversion if, within the last five years, a qualified mental health expert has diagnosed the defendant with a qualifying mental health disorder that was a significant factor in the commission of the charged offense. (§1001.36, subds. (b), (f).) A qualifying diagnosis creates a rebuttable presumption that the disorder was a significant factor in the commission of the offense, which may only be overcome if "there is clear and convincing evidence that [the disorder] was not a motivating factor, casual factor, or contributing factor to the defendant's involvement in the alleged offense." (*Id.*, subd. (b)(2); *Sarmiento v. Superior Court* (2024) 98 Cal.App.5th 882, 891.) For purposes of the diversion statute, a " 'qualified mental health expert' " includes, but is not limited to, "a psychiatrist, psychologist, . . . or a person whose knowledge, skill, experience, training, or education qualifies them as an expert." (§ 1001.36, subd. (f)(2).)

If a defendant satisfies the statutory eligibility criteria, the court must then consider whether he or she is suitable for diversion. All four suitability factors must be met. (§ 1001.36, subd. (c).) These include: (1) a qualified mental health expert has opined that the defendant's symptoms would respond to mental health treatment; (2) the defendant consents to diversion and waives his or her speedy trial rights; (3) the defendant agrees to comply with treatment as a condition of diversion; and (4) the defendant will not pose an unreasonable risk of danger to public safety, as defined in section 1170.18, if treated in the community. (§ 1001.36, subd. (c)(1)-(4).)

We review a trial court's order denying mental health diversion for abuse of discretion and its factual findings for substantial evidence. (*People v. Moine* (2021) 62 Cal.App.5th 440, 448-449.) " 'When reviewing a finding that a fact has been proved by clear and convincing evidence, the question before the appellate court is whether the record as a whole contains substantial evidence from which a reasonable fact finder could

10

have found it highly probable that the fact was true.' " (*Lacour v. Superior Court* (2025) 110 Cal.App.5th 391, 401 (*Lacour*).)

"A court abuses its discretion when it makes an arbitrary or capricious decision by applying the wrong legal standard [citations], or bases its decision on express or implied factual findings that are not supported by substantial evidence." (*People v. Moine, supra*, 62 Cal.App.5th at p. 449.) We presume a trial court's order is correct and indulge all intendments and reasonable inferences to support it. (*People v. Giordano* (2007) 42 Cal.4th 644, 666.) Absent evidence to the contrary, we presume a trial court knew and applied the law. (*People v. Ramirez* (2021) 10 Cal.5th 983, 1042.)

<u>Analysis</u>

We begin by noting that although the trial court found defendant was ineligible for relief, it never reached the issue of his suitability for diversion. In doing so, the record shows the trial court failed to apply the correct legal standards to its eligibility decision.

While the trial court initially questioned whether defendant had satisfied the first eligibility requirement—a timely diagnosis from a qualified mental health expert—the court never expressly found defendant had not done so and, as far as we can tell, did not deny the petition on this basis. By proceeding to the second eligibility requirement— whether there was a causal connection between the diagnoses and the alleged offenses— the trial court arguably found the proffered diagnosis sufficient under the circumstances. Despite the People's argument to the contrary, substantial evidence supports this implied finding.

Here, the letter and proposed treatment plan defendant submitted from the substance use disorder registered counselor showed Community Behavioral Health had referred him to the counselor's agency (Empire Recovery) where he had been assessed in February 2024 with two qualifying mental health disorders (severe methamphetamine and cannabis use disorder), within five years of both the charged offenses and when the court considered the petition.

11

As the court itself recognized, section 1001.36 defines a "qualified mental health expert" broadly. (§ 1001.36, subd. (f)(2).) Unlike the People asserted below, the statute's plain language does not limit a qualified mental health expert to a psychiatrist, psychologist, or other medical doctor. (*People v. Gonzalez* (2017) 2 Cal.5th 1138, 1141 [appellate court interprets a statute to effectuate the law's purpose, applying a plain and commonsense meaning to the statute's text].) Instead, the definition applies to anyone "whose knowledge, skill, experience, training, or education qualifies them as an expert." (§ 1001.36, subd. (f)(2).) Defendant correctly notes that a substance use disorder registered counselor must complete hundreds of hours of classroom education and supervised training regarding addiction counseling, at least over 2,000 hours of work providing counseling services in an alcohol or drug program, and must pass an examination confirming their skill and ability. (Cal. Code Regs., tit. 9, § 13040, subds. (a)-(d).) Under these circumstances, a substance abuse disorder registered counselor possesses the knowledge, skill, experience, training and education to make a substance use disorder diagnosis under the statute.

When assessing defendant, the substance abuse counselor could rely on an examination of defendant, his medical records, arrest reports, "or any other relevant evidence." (§ 1001.36, subd. (b)(1).) Here, the counselor noted defendant reported a 25-year history of daily methamphetamine use and a 35-year history of daily cannabis use, and these addictions "caused negative consequences in his life." This self-reported history of addiction was relevant to diagnosing defendant with substance use disorders. While the counselor's letter and treatment plan might have been more artfully phrased, the evidence was sufficient to show a qualified mental health expert timely diagnosed defendant with two qualifying mental disorders.

The problem with the trial court's ruling lies in its application of the second eligibility requirement concerning the presumed nexus between the qualifying diagnosis and the offenses. As previously noted, to ensure section 1001.36 applies as broadly as

12

possible (*People v. Whitmill, supra*, 86 Cal.App.5th at p. 1149), the Legislature included a presumption that a defendant's diagnosed mental disorder is a significant factor in the commission of an offense *unless* the prosecution presents clear and convincing evidence that it was not a motivating, causal, or contributing factor to the defendant's involvement in the alleged offense. (§ 1001.36, subd. (b)(2); *Lacour, supra,* 110 Cal.App.5th at p. 404.)

It was the People's burden to overcome the statutory presumption. (*People v. Harlow* (2025) 113 Cal.App.5th 485, 491.) But, as the trial court acknowledged, the People did not focus on a lack of connection or nexus at the hearing. And although the prosecutor questioned whether possession of a firearm was an element of a substance use disorder, the People did not present *any evidence* to support a finding that defendant's substance use disorders were not a motivating, causal, or contributing factor to his commission of the charged drug and firearm possession offenses. (*Ibid.* ["argument by counsel 'is not evidence in the case and cannot be relied upon to support the trial court's order' "].)

Despite this lack of evidence, the trial court ruled, based on "common sense," that possession for sale offenses like defendant's could not be causally connected to a substance use disorder and that the Legislature could not have intended section 1001.36 to apply to possession of narcotics for sale cases because a vast majority of the felony cases before the court involved drugs. In essence, the trial court carved out a wholesale exception to mental health diversion for possession for sale offenses that does not appear in the plain text of the statute. (*People v. Harlow, supra*, 113 Cal.App.5th at p. 491 ["It is a corollary to fundamental principles of separation of powers that courts must 'apply the statute[s] as written unless doing so would yield absurd results' "].)

Section 1001.36 does expressly exclude certain offenses from eligibility, including murder, voluntary manslaughter, and various sex offenses (§ 1001.36, subd. (d)(1)-(8)), but neither possession of narcotics for sale nor possession of firearms are included among

those offenses that are categorically ineligible for relief. The fact that a large swath of felony cases may involve some element of drug use does not mean the Legislature meant to preclude diversion relief for all criminal defendants, *with a qualifying mental disorder*, who are charged with possession for sale or possession of firearms. Had it so intended, the Legislature knew how to exclude specific offenses. The absence of an express statutory exclusion for these offenses is telling.

The trial court's musings regarding "the level of sophistication" needed to possess multiple drugs for sale as well as firearms, which, in its view, showed the charged offenses were not the result of an "unconscious" or "involuntary act" resulting from a controlled substance addiction, also do not constitute clear and convincing evidence that defendant's substance use disorders were not a contributing factor in his involvement in the crimes. Again, nothing in section 1001.36, subdivision (b) requires that the commission of the crime be the result of an "unconscious" or "involuntary act" stemming from the mental disorder.

Furthermore, the absence of evidence showing defendant's mental disorder was a factor in the commission of the offenses cannot satisfy the People's burden to rebut the statutory presumption by clear and convincing evidence. (See *Lacour, supra*, 110 Cal.App.5th at p. 404 ["the absence of evidence proving that [a] petitioner's mental disorder *was* a factor in the commission of the offenses is not substantial evidence supporting a finding by clear and convincing evidence that [the] petitioner's mental disorder *was not* a factor in the commission of the offenses"].) In *Lacour*, this court found insufficient evidence to support the trial court's determination that the defendant's mental disorders were not a motivating, causal, or contributing factor to his involvement in 23 car burglaries and carrying a concealed firearm in a vehicle based on its finding that nothing in the police report indicated he was suffering from a mental disorder at the time of the offenses. (*Ibid.*) Similarly, in *Gomez v. Superior Court* (2025) 113 Cal.App.5th 671, 687-689, this court held that by finding the statutory presumption had been

14

overcome by the lack of indication in the police reports that the defendant was suffering from the mental disorder at the time of a robbery, the trial court improperly shifted the burden to the defendant to affirmatively prove that her mental disorder contributed to the offense.

The People's attempt to distinguish *Lacour* and *Gomez* is unavailing. Citing the probation report that describes the police reports, they argue the record here, unlike in *Lacour* and *Gomez*, contains affirmative rebuttal evidence showing defendant's criminal conduct was profit-motivated and not symptom-driven. But the People did not submit the police reports for the court's consideration during the hearing, and the probation report itself had not yet been prepared when the court considered the diversion petition. Thus, contrary to the People's assertion, the record here contains even less evidence than the evidence found insufficient in *Lacour* and *Gomez*.

Because the People were required to show that defendant's diagnosed disorders did *not* contribute to causing the charged criminal conduct, and they did not do so, there was no clear and convincing evidence to rebut the statutory presumption under section 1001.36, subdivision (b)(2). By applying an incorrect legal standard, which improperly shifted the burden to defendant regarding the statutory presumption, the trial court abused its discretion in denying defendant participation in the diversion program based on being *ineligible*.

The People raise other arguments to support the trial court's denial of the diversion petition. They argue defendant failed to show several suitability factors, including that his symptoms would respond to mental health treatment, that he did not present an unreasonable risk of danger of committing a super strike if treated in the community, and that the recommended treatment plan would meet his specialized mental health needs. They also argue that the trial court could exercise its residual discretion to deny mental health diversion, even if all other qualifications are met.

15

Because the trial court did not consider any of the suitability factors, nor did it exercise its residual discretion in denying the petition, it will be able to address these issues on remand. We express no opinion as to how the trial court should exercise its discretion or whether defendant's diversion petition should ultimately be granted. "But we will not deny the petition solely on the basis that the court could possibly have denied mental health diversion on other grounds had it not abused its discretion in finding that the statutory presumption had been overcome." (*Lacour, supra*, 110 Cal.App.5th at p. 405.)

II

*Guilty Plea Based on Lawful Conduct*

The parties agree the trial court erred in accepting defendant's guilty plea to count 11 (misdemeanor possession of marijuana) in case No. 24F1817, and sentencing him on that count, because the alleged conduct to which he pleaded was not criminal. We agree.

Health and Safety Code section 11357, subdivision (b) criminalizes the "possession of *more than* 28.5 grams of cannabis." (Italics added.) By its plain terms, the statute does not apply to possession of less than 28.5 grams of marijuana.

Here, count 11 in the information alleged defendant "did unlawfully possess not more than 28.5 grams of marijuana." By accepting defendant's guilty plea to conduct that is not criminal, and sentencing him for that offense, the trial court exceeded its jurisdiction. (*People v. Mutch* (1971) 4 Cal.3d 389, 395-396, 399 [conviction for conduct not prohibited by statute is void]; *People v. Soriano* (1992) 4 Cal.App.4th 781, 784-785 [the defendant "could not have been guilty of violating Penal Code section 115 by attempting to file a forged instrument because, as a matter of law, the writing he was charged with and admitted forging, a death certificate, is not an instrument within the meaning of section 115"].) Accordingly, we shall modify the judgment to vacate defendant's conviction and sentence on count 11.

16

Defendant's conviction on count 11 in case No. 24F1817 is reversed and the sentence thereon is vacated. Defendant's remaining guilty pleas are conditionally vacated, and the judgment is conditionally reversed. The matter is remanded to the trial court to conduct new proceedings on defendant's petition for mental health diversion in accordance with section 1001.36 and consistent with this opinion. If the trial court grants defendant's petition for mental health diversion, defendant's guilty pleas are vacated, and the judgment is reversed. If the trial court again denies mental health diversion, the trial court shall conduct a full resentencing hearing in light of the reversal of count 11. We need not address defendant's remaining claims, which he may raise at any resentencing hearing, if necessary.


\_\_\_\_\s\_____
HULL, Acting P. J.

We concur:


\_\_\_\_\s\_____
KRAUSE, J.


\_\_\_\_\s\_____
BOULWARE EURIE, J.